# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00755-COA

**FRED CHARLES OSING**                                                        **APPELLANT/
                                                                                           CROSS-APPELLEE**

**v.**

**ALISON HOLLISTER OSING**                                              **APPELLEE/
                                                                                           CROSS-APPELLANT**

DATE OF JUDGMENT:                          06/28/2022
TRIAL JUDGE:                                       HON. D. NEIL HARRIS SR.
COURT FROM WHICH APPEALED:      JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:            HENRY BERNARD ZUBER III
ATTORNEY FOR APPELLEE:              MARK V. KNIGHTEN
NATURE OF THE CASE:                      CIVIL - DOMESTIC RELATIONS
DISPOSITION:                                     ON DIRECT APPEAL: AFFIRMED IN
                                                            PART; REVERSED AND REMANDED IN
                                                            PART.  ON CROSS-APPEAL: REVERSED
                                                            AND REMANDED - 08/13/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McCARTY AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     The Jackson County Chancery Court entered a judgment granting Fred and Alison

Osing an irreconcilable-differences divorce.  Both parties filed separate motions to amend

or alter the judgment under Mississippi Rule of Civil Procedure 59.  In his final judgment

addressing the parties' Rule 59 motions, the chancellor reaffirmed his prior ruling regarding

the division of Fred's retirement account and denied all other requested relief.

¶2.     On appeal, Fred argues the chancellor erred (1) by denying his motion to withdraw

his consent to an irreconcilable-differences divorce; (2) in dividing the marital estate; and (3)

by awarding Alison permanent alimony. On cross-appeal, Alison asserts that the chancellor erred by failing to require Fred to pay for all expenses associated with college and health insurance for the parties' minor son.

¶3.     With regard to Fred's claims, we affirm the chancellor's denial of Fred's motion to withdraw consent to the irreconcilable-differences divorce. We find, however, that in dividing the marital estate, the chancellor failed to make sufficient factual findings as to certain assets and debts. As a result, we reverse that part of the chancellor's judgment and remand the issue of equitable division of the marital estate for further findings of fact and conclusions of law consistent with this opinion. In so doing, we recognize that the chancellor's reconsideration of the division of the marital estate may impact his award of alimony to Alison. We therefore also reverse that part of the chancellor's judgment for further consideration upon remand. The same reasoning applies to Alison's cross-appeal regarding the minor son's college expenses and health-insurance coverage. Because such financial awards may also be impacted by the chancellor's reconsideration of the parties' property division, we likewise reverse the chancellor's decision as to those issues so that the chancellor may revisit them upon remand along with the equitable distribution of the marital estate and Alison's award of alimony.

**FACTS**

¶4.     Fred and Alison married in September 1996, and they separated in June 2020. During their marriage, the parties had a daughter and a son. Alison initially worked as a nurse but became a stay-at-home mother once the parties' daughter was born. Fred worked as a banker

throughout the marriage.

¶5.   On June 22, 2020, Alison filed a complaint for an irreconcilable-differences divorce. She then filed an amended complaint on August 10, 2020, seeking a divorce on the ground of habitual cruel and inhuman treatment or, alternatively, irreconcilable differences. Fred answered the amended divorce complaint and denied all of Alison's allegations.

¶6.   Following a hearing, the chancellor entered a temporary order on October 16, 2020, that granted the parties joint legal custody, granted Alison temporary physical custody of the parties' minor son, ordered the parties to equally divide any proceeds from the sale of the marital home, and ordered Fred to pay Alison $1,400 a month in child support. The temporary order also directed Fred to pay for expenses associated with the following: automobiles, insurance, cell phones, and college for the parties' daughter.

¶7.   On January 22, 2021, the parties consented to an irreconcilable-differences divorce and agreed to submit for the chancellor's determination the remaining issues of "[a]limony, child support, visitation, division of assets and debts to include retirement/pension[, a]ttorney[']s fees[,] and back child support to the date . . . the complaint was filed." The parties' filing acknowledged their understanding that their consent to the irreconcilable-differences divorce could "not be withdrawn . . . without leave of the Court after the Court ha[d] commenced any proceeding, including the hearing of any motion or other matter pertaining thereto."

¶8.   Following a hearing on January 22, 2021, the chancellor entered a temporary order that same day that maintained the parties' joint legal custody and Alison's temporary physical

3

custody of the minor son. The temporary order also awarded visitation to Fred, reduced his monthly child-support obligation to $1,100, and eliminated his duty to pay Alison's automobile loan. The temporary order reserved for trial the issues of attorney's fees and back child-support payments.

¶9. An amended temporary order was entered on February 5, 2021, nunc pro tunc to January 22, 2021, directing Fred to also pay Alison $2,000 a month in alimony. On April 13, 2021, the chancellor entered an order resetting the trial on the matter. The April 13, 2021 order stated that "[a]ll prior orders are to remain in full force and effect."

¶10. On April 29, 2021, Fred filed a motion seeking leave to withdraw his consent to the irreconcilable-differences divorce. Fred asserted that it had become necessary for him to withdraw his consent because no fault grounds existed for the parties' divorce. In May 2021, the parties' matter was transferred to the active docket of a different chancellor. Following a hearing on June 15, 2021, the chancellor entered an order requiring the parties to provide updated Rule 8.05 financial statements[1] and lists of the witnesses and evidence they planned to introduce at trial.

¶11. On May 26, 2022, the chancellor entered a final judgment of divorce. The chancellor denied Fred's motion seeking leave to withdraw his consent to the divorce and granted the parties an irreconcilable-differences divorce. The chancellor awarded Alison physical custody and awarded the parties joint legal custody of their minor son. The chancellor also awarded visitation to Fred and ordered him to pay Alison $1,167 a month in child support.

---

[1] *See* UCCR 8.05.

4

With regard to the parties' daughter, the chancellor noted that she was over the age of twenty-one and had become legally emancipated.

¶12.    In addressing the equitable distribution of the marital estate, the chancellor discussed the *Ferguson* factors[2] but ultimately did not conclude which party, if any, each factor favored.  Likewise, when addressing the issue of alimony, the chancellor discussed the *Armstrong* factors[3] but did not state which party, if any, each factor favored.  Nevertheless, the chancellor directed Fred to pay Alison $1,500 each month in alimony and ordered Fred's monthly alimony obligation to increase to $2,500 in two years once the parties' minor son reached age twenty-one or became otherwise emancipated.

¶13.    The chancellor concluded that the money Alison had inherited from her parents was her separate property.  The chancellor's analysis did not address, however, a retirement account to which Alison had contributed during the early years of the parties' marriage when she worked as a nurse.  By contrast, the chancellor addressed Fred's retirement account and ordered that those funds be equally divided between the parties as of the date of their divorce.

¶14.    Both parties filed Rule 59 motions to alter or amend the final judgment.  Fred also filed an amended Rule 59 motion to alter or amend the final judgment.  On June 28, 2022, the chancellor entered another final judgment that addressed the parties' various Rule 59 motions. The chancellor's June 28, 2022 final judgment incorporated a paragraph from his earlier judgment that had directed Fred to present a qualified domestic relations order to

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

[3] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

allow Alison to receive one-half of the amount in his retirement account. Unless Fred could "produce evidence that a different amount exists as of [the date of the parties' divorce on] May 26, 2022[,]" the chancellor ordered that Alison was to receive one-half of the $831,670.16 reflected on the statement previously submitted to the court. The chancellor denied all other relief requested in the parties' Rule 59 motions. Aggrieved, Fred appeals, and Alison cross-appeals.

## STANDARD OF REVIEW

¶15. If substantial evidence supports a chancellor's findings of fact, this Court will affirm the chancellor's determinations unless he "abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard . . . ." *Fox v. Fox*, 381 So. 3d 391, 394 (¶9) (Miss. Ct. App. 2023) (quoting *Page v. Graves*, 283 So. 3d 269, 274 (¶18) (Miss. Ct. App. 2019)). We review issues of law de novo. *Id.*

## DISCUSSION

### I. Withdrawal of Consent

¶16. Fred asserts that the chancellor erred by denying his request to withdraw his consent to the parties' irreconcilable-differences divorce. Relevant to Fred's argument, Mississippi Code Annotated section 93-5-2(3) (Rev. 2021) provides the following:

> If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and

6

lawful judgment. Such consent may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto.

¶17. Here, the parties' consent agreement for an irreconcilable-differences divorce complied with section 93-5-2(3). On January 22, 2021, the chancellor considered and, after questioning both parties, ultimately accepted their consent agreement. The chancellor then proceeded to hold a hearing during which the parties provided testimony. Following the hearing, the chancellor entered a temporary order pertaining to issues such as custody of and support for the minor child. Between the date of the January 22, 2021 hearing and three months later when Fred filed his motion to withdraw consent on April 29, 2021, the chancellor entered an amended temporary order that required Fred to pay Alison alimony. Also during that time, the chancellor entered an order that reset the date of the parties' trial.

¶18. Thus, based on the record before us, section 93-5-2(3) required Fred to seek the court's leave to withdraw his consent to the irreconcilable-differences divorce. Fred complied with the statute, but the chancellor denied his motion. Upon review, we can find no abuse of discretion or clear error in the chancellor's decision. We therefore affirm the chancellor's denial of Fred's motion to withdraw his consent.

## II. Equitable Distribution of the Marital Estate

¶19. Fred raises multiple issues related to the chancellor's distribution of the marital estate. Specifically, Fred contends that the chancellor failed to properly evaluate if Alison's inherited funds became commingled with marital assets, determine if the accumulated interest on Alison's inherited funds constituted marital property, consider and value Alison's

retirement account, address the parties' marital debt, and properly apply the *Ferguson* factors in splitting Fred's retirement account.

¶20. "In dividing marital property, chancellors must (1) classify the parties' assets and liabilities as marital or separate . . . , (2) determine the value of the property, and then (3) divide the marital property equitably, employing the *Ferguson* factors as guidelines in light of each [party's] separate property." *Thompson v. Thompson*, 380 So. 3d 945, 953 (¶31) (Miss. Ct. App. 2024) (citation and internal quotation mark omitted). "The law presumes that all property acquired or accumulated during marriage is marital property." *Cannon v. Cannon*, 375 So. 3d 697, 710 (¶43) (Miss. Ct. App. 2023) (quoting *Castle v. Castle*, 266 So. 3d 1042, 1049 (¶28) (Miss. Ct. App. 2018)). Nonmarital property, "such as inheritances, may be converted into marital assets if they are commingled with marital property or utilized for domestic purposes, absent an agreement to the contrary. Separate property that has been commingled with the joint marital estate also becomes marital property subject to equitable distribution." *Id.* at 712 (¶49) (citations omitted) (quoting *Stewart v. Stewart*, 864 So. 2d 934, 937 (¶12) (Miss. 2003)).

¶21. "When determining whether certain property is marital, a chancery court must inquire whether any income or appreciation resulted from either spouse's active efforts during the marriage. If so, that income or appreciation becomes part of the marital estate." *Id.* at 711 (¶46) (citations, emphasis, and internal quotation marks omitted). "The party claiming that the asset is separate, nonmarital property has the burden of proof and must overcome the presumption that the asset is marital property." *Id.* at 710 (¶43) (quoting *Castle*, 266 So. 3d

8

at 1049 (¶28)). "To determine the date when assets cease to be marital, i.e., the point of demarcation, the chancery court can use either the date of separation or the date of the divorce." *Brown v. Brown*, 350 So. 3d 1169, 1178 (¶30) (Miss. Ct. App. 2022). A chancellor's failure to properly classify and value the parties' assets can result in reversal. *Id.* at 1179-80 (¶¶31, 34).

¶22. The parties' testimony reflected that in 2015, Alison inherited about $500,000 from her parents. Fred testified that with the exception of one account, he paid the taxes on the funds that Alison claimed as her separate property. Alison provided no testimony or evidence to dispute Fred's assertion that he paid the taxes for all but one of the accounts containing her inherited money. Thus, the only evidence in the record regarding this issue supports Fred's claim on appeal that his active efforts during the parties' marriage allowed a portion of Alison's inherited money to appreciate. To the extent that the chancellor did not consider this appreciation of Alison's inherited money as marital property, we find the chancellor erred.

¶23. As to the almost $500,000 that Alison inherited, the parties adamantly disagree on whether the money remained Alison's separate property or became commingled with marital assets through family use that converted the money to marital property. According to Alison's testimony, she informed Fred when she received the money that she wanted to keep the funds separate from their marital assets. Alison claimed that Fred agreed to keep her inheritance separate. Alison testified that she opened accounts solely in her name and placed the inherited money directly into those separate accounts. Alison further testified that she

9

withdrew money from the separate accounts to pay for plastic surgery and reconstructive surgery, four trips with her children where she specifically excluded Fred, the renewal of her nursing license, and a boat for the parties' minor son. Two years after purchasing the boat, Alison sold it because she stated that the parties' minor son never really used the boat. Alison testified that she deposited the proceeds from the sale of the boat into a separate savings account specifically designated for the parties' son. Alison also testified that she never used her inheritance to pay marital bills and that she never used the money for Fred's benefit.

¶24. For his part, Fred maintains that although Alison did not use any of her inherited money specifically for his personal benefit, he was still a member of their family, and she used the money for the benefit of other family members and the family in general. He therefore argues that the chancellor erred by not classifying Alison's inherited money as marital property. Despite Fred's assertions, we conclude that substantial credible evidence supported the chancellor's determination that Alison's inherited money remained her separate property and therefore was not subject to equitable distribution. As a result, we affirm the chancellor's finding with regard to this matter.

¶25. Fred also argues that the chancellor failed to classify Alison's retirement account as separate or marital property and failed to determine the value of the retirement account. A review of the chancellor's May 26, 2022 final judgment reveals no discussion of any such retirement account in the analysis regarding the equitable distribution of the marital estate. The parties both testified, however, that Alison worked as a nurse for several years before

the births of their children. Alison specifically stated that she worked for four years. She testified that she worked for two years before the parties' marriage and for two years after their marriage. Alison further testified that she thought the current value of her retirement account was around $19,000. When questioned on cross-examination, Alison agreed that Fred would be entitled to half of her retirement account. Thus, to the extent that the chancellor's final judgment did not consider the classification and valuation of Alison's retirement account in his distribution of the marital estate, we reverse and remand for further proceedings on this issue consistent with this opinion.

¶26. The chancellor also omitted from his analysis any discussion of the parties' marital or separate debts. Fred testified that the parties had marital debt that included loan payments on four vehicles, credit card balances, a line of credit, and student loans for their daughter. Alison, however, disputed Fred's claim that the above-mentioned items constituted marital debt. Alison asserted that the only debt she had incurred during the parties' marriage was the loan payment on her own automobile. As to the other items to which Fred had testified, Alison stated that she had not signed the loans along with Fred. She therefore asserted that the chancellor should assign full responsibility for those debts to Fred alone.

¶27. Because the chancellor did not address the parties' debts, we must reverse and remand the issue of their property division to allow the chancellor to make appropriate findings of fact and conclusions of law as to the proper classification, valuation, and equitable division of all the parties' assets and liabilities. *See Thompson*, 380 So. 3d at 953 (¶31). In so doing, we acknowledge Fred's remaining arguments that the chancellor erred by equally dividing

11

his retirement account, by making incorrect findings as to several *Ferguson* factors, and by failing to apply one valuation date to all the parties' assets.

¶28.    The chancellor's judgment reflects that although he discussed the *Ferguson* factors, he did not explicitly state which party, if any, each factor favored.  Our caselaw requires chancellors to "support their decisions applying *Ferguson* in dividing marital property with findings of fact and conclusions of law." *Thompson*, 380 So. 3d at 954 (¶33) (quoting *Vassar v. Vassar*, 228 So. 3d 367, 378 (¶40) (Miss. Ct. App. 2017)).  In addition, the chancellor valued Fred's retirement account, which he equally divided between the parties, as of the date of divorce on May 26, 2022, but he valued Alison's inherited money as of December 31, 2020.  Established precedent provides that "[t]o determine the date when assets cease to be marital, i.e., the point of demarcation, the chancery court can use either the date of separation or the date of the divorce." *Brown*, 350 So. 3d at 1178 (¶30).  The chancellor should remain mindful of this guidance as he seeks to properly classify, value, and equitably divide the parties' marital estate upon remand.  Because the chancellor must necessarily revisit these remaining issues upon remand of the equitable division of the marital estate, we decline to further address them on appeal.

### III.    Alimony, College Expenses, and Health Insurance

¶29.    Fred next contends on appeal that the chancellor erred in awarding permanent alimony to Alison.  In her cross-appeal, Alison asserts that the chancellor erred by failing to fully assign Fred the responsibility for the minor son's college tuition and health insurance.

¶30.    First, we note that relevant to Alison's cross-appeal, Mississippi Code Annotated

12

section 43-19-101(7) (Rev. 2021) provides that "[a]ll orders involving support of minor children, as a matter of law, shall include reasonable medical support. . . . In any case in which the support of any child is involved, the court shall make . . . findings either on the record or in the judgment" as to "[t]he availability to all parties of health insurance coverage for the child(ren)" and "[t]he cost of health insurance coverage to all parties." "The requirements of section 43-19-101[(7)] are mandatory and apply in all cases involving child support." *Savell v. Manning*, 325 So. 3d 1208, 1224 (¶57) (Miss. Ct. App. 2021). Here, the final judgment included no discussion about "reasonable medical support" for the parties' minor son. Miss. Code Ann. § 43-19-101(7). Thus, as a matter of law, we must reverse this part of the chancellor's judgment and remand for further proceedings consistent with this opinion.

¶31. As to the parties' remaining arguments, we conclude that because reversal of the equitable division of the marital estate is necessary, we likewise must reverse the chancellor's determinations as to all other financial awards such as Alison's alimony and the minor son's college expenses. *See Thompson*, 380 So. 3d at 958 (¶49). We acknowledge that the chancellor's reconsideration of the parties' property division may necessarily impact his decision regarding these other financial matters. We therefore also reverse the chancellor's award of alimony and denial of the minor son's college expenses so that he may readdress these matters on remand in conjunction with the issues of property division and health-insurance coverage for the minor son.

**CONCLUSION**

13

¶32. Upon review, we affirm the chancellor's denial of Fred's motion to withdraw his consent to the irreconcilable-differences divorce and the chancellor's determination that Alison's inherited money remained her separate property. In considering Fred's remaining claims regarding property division, however, we conclude that the chancellor erred in the proper classification, valuation, and equitable division of the parties' assets and debts. We therefore reverse and remand the issue of property division to allow the chancellor to make sufficient findings of fact and conclusions of law consistent with this opinion. Because the chancellor's reconsideration of the division of the marital estate may impact other financial awards, such as alimony for Alison and college expenses and health insurance for the minor son, we likewise reverse and remand these matters for reconsideration along with the parties' property division.

¶33. **ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART. ON CROSS-APPEAL: REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**